WeldoN, J.,
delivered the opinion of the court:
The findings show that the Indians at the time of the depredation were not in amity with the United States; and the treaty under which it is claimed there is a responsibility on the part of the Indians and the United States did not take effect until after the depredation was committed. The treaty was made on the 9th day of June, 1855, but by the eleventh article it is provided: “This treaty shall be obligatory on the con-' tracting parties as soon as the same shall be ratified by the President and Senate of the United States. ”
On the 8th of March, 1859, the Senate consented to the ratification of the treaty, and on the 18th'day of April, 1859, the President proclaimed the ratification as follows:
*147 Now, therefore, be it known that I, James Buchanan, President of the United States of America, do, in pursuance of the advice and consent the Senate, as expressed in their resolution of March 8,1859, accept, ratify, and confirm the said treaty.’7 (12 Stat.L., p.951.)
The liability of the parties by the terms of the treaty dates from the ratification'of it by the Senate and the President; and whatever may be the legal effect of the treaty on the condition of amity, it can not affect that condition in this case, as it was not operative at the time of the depredation.
• The Indians committing the depredation were not as a matter of law in treaty relations with the United States on the 26bh of March, 1859. It is true they had consented to the terms of the treaty, but those terms had not been formally accepted by the other party. It was only a proposition on the part of the Indians to become bound by the terms of the treaty, subject 'to the acceptance or rejection of the other party.
The Indians and the United States, like all other independent contractors, may agree by the terms of their contract when it shall take effect, and courts will enforce that provision in dealing with the rights and obligations of the parties.
As between nations, treaties operating upon purely national rights operate from the date of signing, in the absence of a provision to the contrary. In the case of the United States v. Beynes (9 Howard, 148) it is said by the Supreme Court: “ The treaty between the United States and the ltepublic of France contains no article or condition by which its operation could be suspended.” In the case of Haver v. Yaker (9 Wall., 34) the Supreme Court makes a distinction between purely national and individual rights. It is said: “It is undoubtedly true, as a principle of international law, that, as respects the rights of either government under it, a treaty is considered as conclusive and binding from the date of its signature. In this regard the exchange of ratifications has a retroactive effect, confirming the treaty from its date. But a different rule prevails where the treaty operates on individual rights. The principle of relation does not apply to rights of this character, which were vested before the treaty was ratified.”
To give the treaty bearing date June 9,-1855, a retroactive operation from the date of its ratification would be doing violence to the express language of the eleventh article which pro *148 vides that it shall be obligatory from the date of its ratification. In the case of the United States v. Reynes, in 9 Howard, the Supreme Court clearly indicate that, if there had been a provision in the treaty under consideration that it .was to be suspended until its ratification, the law would have been different in that case.
Without deciding in this case what would have been the effect on the rights of parties if the treaty had been in force, it is sufficient to say that the question does not arise, as we hold that the treaty became operative from the time of its proclamation by the President, which, in effect, was the ratification of the treaty by the President. It is the judgment of the court that the petition be dismissed.